IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| Plaintiff, : | |
| : | CASE NO. 3:13-CV-62 |
| v. : | |
| : | |
| $940,313.00 IN UNITED STATES : | |
| FUNDS : | |
| : | JURY TRIAL DEMANDED |
| Defendant Property : | |

PETITION FOR IMMEDIATE PARTIAL RELEASE OF SEIZED PROPERTY AND
DEPRIVATION HEARING

COMES NOW, Andrew Clyde and Clyde Armory, Inc. ("Claimants") and file this Petition for Immediate Partial Release of Defendant Property pursuant to 18 USCS § 983 (f).  In support of the Petition, the Claimants show the Court the following:

Introduction and Facts

Andrew Clyde is a long time resident of Athens, Georgia.  He has a distinguished reputation, having served in the United States Navy on active duty for 11 years and in a reserve capacity for 17 years.  He is also an active member of his local church, Prince Avenue Baptist Church, having served as a deacon since 2003.  During his tenure in the military, he performed three tours of combat duty in the Iraqi theater.  Mr. Clyde received the Defense Meritorious Service Medal, the Meritorious Service Medal, the Navy Commendation Medal (4 Awards), the Navy Achievement Medal, the Global War on Terrorism Expeditionary Medal with Marine Corps Combat Operations Insignia, the Iraq Campaign Medal and the Armed Forces Expeditionary Medal.  He has received numerous other lesser medals for service to his country and also continues to hold a Secret Military Clearance.

In addition to his military service, Mr. Clyde has served in local law enforcement as a firearms instructor since 2010. Mr. Clyde is also a Federal Firearms License holder. In short, Mr. Clyde has been subjected to numerous background investigations and other security reviews; he is more than a model citizen of his community and of this country.

In 1991 Mr. Clyde started Clyde Armory and the sole proprietorship was converted to a for-profit corporation in 2009, becoming Clyde Armory, Inc. The company has grown rapidly and now operates a 12,000 square foot brick and mortar facility in Athens, Georgia which employs 26 people. The company sells all manner of firearms and ammunition, including federally restricted rifles to Law Enforcement Agencies. While retail sales only make up about 1/3 of its revenue, the company receives all of its cash from the retail portion of the business.

It is not disputed by the Government that Mr. Clyde properly handles his cash. The company has a point of sale (POS) system which documents the entry of cash into the bookkeeping software immediately upon receipt. Mr. Clyde has a financial staff comprised of a bookkeeper and a certified public accountant, whom accurately handle and report the cash entries.

It is not disputed by the Government that the cash is legitimate. Under federal firearms regulations, Clyde Armory is required to perform background checks and provide federal documentation on all gun purchases. If a customer purchases a gun, he must either have a valid carrying permit or be subject to NICS background check to assess whether the customer can legally make the purchase. The simple fact is that all items purchased for cash are by individuals that have saved cash so that they can enjoy the hobby of hunting or target shooting, or fulfill the need to provide security for their family.

Mr. Clyde had a very limited knowledge of how banks operate and how they handle cash transactions that exceeded $10,000.00. Further, Mr. Clyde was not aware of the concept of structuring or the fact that structuring is considered illegal. Prior to April 12th, 2013, Mr. Clyde had never deposited over $10,000 cash at any one time in his entire life. Since cash is irreplaceable if lost or stolen, he has always believed, and continues to believe, that carrying larger sums of cash is too risky and not a good business practice.

It is important to note that all of the deposits in question were made at one location, Robins Federal Credit Union, located at 2636 Atlanta Highway, Athens, Georgia. Mr. Clyde has a history with this institution since he has banked at this location for 4 years.

On April 12, 2013, the IRS seized $940,313.00 in United States currency from the Robins Federal Credit Union Account. At no time prior to the seizure did the IRS issue the customary Notice of Law, which places depositors on notice of the law. They simply seized the currency.

We respectfully request the Court to release a substantial portion of the Defendant Property to allow Clyde Armory, Inc. to have operating capital for its business.

Brief in Support of Petition

The Federal Forfeiture statute provides for the release of seized property under certain circumstances. The standard is:

(f) Release of seized property.

(1) A claimant under subsection (a) is entitled to immediate release of seized property if—

(A) the claimant has a possessory interest in the property;

(B) the claimant has sufficient ties to the community to provide assurance that the property will be available at the time of the trial;

      (C) the continued possession by the Government pending the final disposition of forfeiture proceedings will cause substantial hardship to the claimant, such as preventing the functioning of a business, preventing an individual from working, or leaving an individual homeless;

      (D) the claimant's likely hardship from the continued possession by the Government of the seized property outweighs the risk that the property will be destroyed, damaged, lost, concealed, or transferred if it is returned to the claimant during the pendency of the proceeding; and

      (E) none of the conditions set forth in paragraph (8) applies.

***

(8) This subsection shall not apply if the seized property—

      (A) is contraband, currency, or other monetary instrument, or electronic funds unless such currency or other monetary instrument or electronic funds constitutes the assets of a legitimate business which has been seized;

18 USCS § 983.

We submit that the Claimants meet the requirements of A through D.  However, the Petition does not meet the requirement of E, as it is interpreted by the Government.  Claimants submit that the provision of Paragraph 8 is unconstitutional and should either be stricken or read in a manner so that it complies with the United States Constitution.

      The offensive provision of the law reads:

 (8) This subsection shall not apply if the seized property--

    (A) is contraband, currency, or other monetary instrument, or electronic funds unless such currency or other monetary instrument or electronic funds constitutes the assets of a legitimate business which has been seized;

In short, this provision provides that working capital for an ongoing business concern cannot be returned under any circumstances, but currency for a seized business (where working capital is not needed) can be returned.  Not only does the provision defy logic, it offends the United States Constitution.

U.S CONST. amend XIII.

In an unpublished opinion, this Circuit adopted the analysis of the Honorable Mary S. Scriven in the United States District Court for the Middle District of Florida, where she reduced the forfeiture in a similar matter from $967,100.00 to $103,000.00.  *United State v. Ramirez*, Case No. 6:09-cr-45-Orl-35KRS (M.D. Fl. 2011), *affirmed by United States v. Ramirez*, 421 Fed. Appx. 950, 953 (11th Cir. 2011).[1]  In affirming, the Eleventh Circuit looked to the analysis of the Eighth Amendment in *United States v. Bajakajian*, 524 U.S. 321, 338-39 (1998). The *Ramirez* Court used the three-part analysis regarding the fine.  The factors are: (1) whether the defendant falls into the class of persons at whom the criminal statute was principally directed; (2) other penalties authorized by the legislature (or the Sentencing Commission); and (3) the harm caused by the defendant. *See also, United States v. Heldeman*, 402 F.3d 220, 223 (1st Cir. 2005), (*citing Bajakajian*).

The ultimate test is whether the forfeiture is grossly disproportional to the gravity of a defendant's offense. *Bajakajian* at 334.

Claimants recognize that the plain language of 18 USCS § 983 (f)(8)(A) provides the release of currency is not available if it is "contraband, currency, or other monetary instrument, or electronic funds unless such currency or other monetary instrument or electronic funds

---

[1] Opinion attached.

constitutes the assets of a legitimate business which has been seized." Claimants further recognize that several courts have affirmed the requirement that proceeds cannot be released unless the business itself is seized. *See United States v. 8 Gilcrease Lane*, 587 F. Supp. 2d 133 (D.C. Cir. 2008); *In re Seizure Warrants Issued March 27, 2008, & April 23, 2008*, 593 F. Supp. 2d 892 (N.D. W. Va. 2008). However, it appears that the issue of the Eighth Amendment was not addressed.

To apply the language of this statute in this manner results in the Claimant whose business is not seized being subjected to an excessive fine for the life of the litigation, whereas a Claimant whose business is seized being able to seek relief. In short, the Government is suggesting that Congress intended to deny this Court the opportunity to consider whether this seizure is constitutional on its face; this interpretation offends the Eighth Amendment, and Due Process Clause.

The constitutionally acceptable interpretation would be that all restrictions on mitigation apply to currency unrelated to a business, i.e., drug proceeds, but all currency relating to a business should be subject to mitigation. In reviewing the statute as a whole, we submit that this was Congress's intent. This is reflected in (f)(1)(a)(C) where the language "such as preventing the functioning of a business" as a the basis for a hardship mitigation. Specifically, this language provides:

> **(1)** A claimant under subsection (a) is entitled to immediate release of seized property if -
> \*\*\*
> **(C)** the continued possession by the Government pending the final disposition of forfeiture proceedings will cause substantial hardship to the claimant, **such as preventing the functioning of a business**, preventing an individual from working, or leaving an individual homeless;

(Emphasis Added).

In sum, we submit that applying Paragraph 8, as held in *Gilcrease & In re Seizure Warrant*, offends the Eighth Amendment. The provision should be stricken as unconstitutionally vague or interpreted to mean that all seizures of cash from a viable business be subject to mitigation. With this interpretation, it is undisputable that the seizure represents an excessive penalty and those portions in excess of $1,000.00 per transaction should be returned to Clyde Armory, Inc., while the remaining portion can be subject to litigation in accordance with applicable law.

*Due Process Amend V*

In this instance, the IRS obtained an *ex parte* seizure warrant. During meetings, the Government initially expressed concerns about the source of the cash and the tax treatment of the proceeds. Following a meeting with government agents and the Assistant United States Attorney, the Government acknowledged that the proceeds were not derived from illegal activities and that the proceeds received appropriate tax treatment. On April 26, 2013, Claimants demanded an emergency remission of $488,000.00. The Government denied the request.

Claimants respectfully submit that, under the circumstances of this case, upon the determination that the money represented legitimate proceeds, the Government had an obligation to retract their *ex parte* action and provide the Claimants with an immediate deprivation hearing. *See, United States v. 408 Peyton Rd.*, 162 F.3d 644, 646 (11th Cir.1998).

The Court in *Peyton* discussed the unacceptable risks of *ex parte* seizures, noting that fairness can rarely be obtained by secret, one-sided determinations of facts decisive of rights. *Id.* at 651. The Court notes that absent exigent circumstances, the Government must implement

means less restrictive than an *ex parte* seizure. *Id.* The Court references *lis pendens*, restraining order, or bond. *Id.* While the Claimants have been unable to find authority relating to deprivation seizures involving currency, Claimants submit that this case possesses unique circumstances in that the money represents proceeds from a legitimate, long term business with substantial assets, and a long term history. Claimants submit that the United States' interest can be protected by bond, thus, at this point the exigency of the currency dissipating is nonexistent.

## CONCLUSION

For the foregoing reasons, Claimants submit that the seizure and the Government's application of the statute offends Amendments V and VIII of the United States Constitution. Claimants respectfully request that the Court set this matter down for hearing at the earliest opportunity.[2]

Respectfully submitted this 7th day of June, 2013.

PRIOR, DANIEL & WILTSHIRE, LLC

By: */s/ Michael C. Daniel*
Michael C. Daniel
State Bar No. 204237
Attorney for Claimant

490 N. Milledge Avenue
Athens, Georgia 30601
(706) 543-0002

---

[2] Pursuant to Fed. R. Civ. P. 5.1, the United States is entitled to 60 days notice, if the Court determines that a Statute or the implementation of a Statute violates the U.S. Constitution.

CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that he has this 7th day of June, 2013, filed the foregoing *PETITION FOR IMMEDIATE PARTIAL RELEASE OF SEIZED PROPERTY AND DEPRIVATION HEARING* using the Court's Case Management/Electronic Case Filing system, which will automatically deliver notice of, and serve, the foregoing document to the following parties in this case:

Michael J. Moore
United States Attorney &
Danial E. Bennett
Assistant United States Attorney
United States Attorney's Office for the Middle District of Georgia
P.O. Box 1702
Macon, Georgia 31202-1702

The undersigned further certifies that he has mailed this notice to the following by certified mail.

Eric Holder
The Attorney General of the United States of America
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

This 7th day of June, 2013.

PRIOR, DANIEL & WILTSHIRE, LLC

By:   */s/ Michael C. Daniel*
      Michael C. Daniel
      State Bar No. 204237
      Attorney for Claimant

490 N. Milledge Avenue
Athens, Georgia 30601
(706) 543-0002



3 of 12 DOCUMENTS

**UNITED STATES OF AMERICA, Plaintiff-Appellee, versus LUCIO RAMIREZ, Defendant-Appellant.**

**Nos. 10-12785, 10-13249 Non-Argument Calendar**

**UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT**

*421 Fed. Appx. 950*; *2011 U.S. App. LEXIS 7033*

**April 4, 2011, Decided**
**April 4, 2011, Filed**

**NOTICE:** PLEASE REFER TO *FEDERAL RULES OF APPELLATE PROCEDURE RULE 32.1* GOVERNING THE CITATION TO UNPUBLISHED OPINIONS.

**PRIOR HISTORY:** [**1]

Appeals from the United States District Court for the Middle District of Florida. D.C. Docket No. 6:09-cr-00045-MSS-KRS-1.

**COUNSEL:** For UNITED STATES OF AMERICA, Plaintiff - Appellee: Peggy Morris Ronca, Assistant U.S. Attorney, Daniel W. Eckhart, U.S. Attorney's Office, ORLANDO, FL; Robert E. O'Neill, David Paul Rhodes, US Attorney's Office, TAMPA, FL.

For LUCIO RAMIREZ, Defendant - Appellant: Ricardo R. Pesquera, Law Office Of Ricardo R. Pesquera, Orlando, FL, US.

**JUDGES:** Before BARKETT, PRYOR and KRAVITCH, Circuit Judges.

**OPINION**

[*951] PER CURIAM:

Lucio Ramirez appeals his convictions for structuring financial transactions to evade reporting requirements. *31 U.S.C. § 5324(a)(3), (d)*. Ramirez argues that the district court abused its discretion in its answer to a question submitted by the jury. The United States cross-appeals and argues that the district court erred in failing to order Ramirez to forfeit the entire amount "involved in" his structuring crime, *31 U.S.C. § 5317(c)(1)(A)*. We reject the arguments of both Ramirez and the United States, and we affirm Ramirez's convictions and the order of forfeiture.

Ramirez argues that an answer of the district court to a question submitted by the jury was "confus[ing]," [**2] but we disagree. During its deliberations, the jury sent the district court a note that asked whether "structuring mean[t] that [Ramirez] had to know what a [Currency Transaction Report] form was." The district court responded by identifying the statute that Ramirez was accused of violating, referencing the specific reporting requirement, and naming the form that banks are obligated to file with the government. See *United States v. Elso, 422 F.3d 1305, 1311 (11th Cir. 2005)*. The district court stated that "*Section 5324(a)(3)* makes it a federal crime . . . to knowingly evade a currency transaction reporting requirement"; "*Section 5313(a)*. . . require[s] domestic financial institutions and banks . . . to file reports with the government called Currency Transaction Reports, Form 4789, disclosing" all financial transactions "involving more than $10,000 in cash or currency"; and Ramirez had to have "knowledge of the

currency transaction reporting requirements as set forth in . . . *Section 5313(a)*." The district court did not abuse its discretion in answering the question of the jury.

[*952] The United States argues in its cross-appeal that the district court selected arbitrarily an amount for Ramirez [**3] to forfeit and ignored the requirement that he forfeit the amount "involved in" his crime, *31 U.S.C. § 5317(c)(1)(A)*, but we disagree. The district court considered the amount "involved in" Ramirez's structuring crime and determined that a forfeiture of the entire $967,100 would violate the *Excessive Fines Clause of the Eighth Amendment*. Although the district court stated that it had "not ma[de] an *Eighth Amendment* analysis" because "the *[Eighth] Amendment* is not drawn on the case until and unless the Court imposes a fine that violates the *[Eighth] Amendment*," the district court explained that the *Eighth Amendment* had "informed" its decision "with respect to what is proper and what is improper." That this constitutional concern guided the decision of the district court is apparent from its comments during the forfeiture hearing and at sentencing. At the conclusion of the forfeiture hearing, the district court stated that "really the only question" remaining was whether "the forfeiture/judgment [would be] unconstitutional," and the district court commenced the sentencing hearing by stating that it had rejected the "demand for forfeiture [of $967,100 that] the [United States] s[ought]" [**4] based on how "the constitutional question inform[ed] the Court's decision."

The district court correctly considered whether the amount of forfeiture sought by the United States would constitute an excessive penalty. The Supreme Court held in United States v. Bajakajian that a "forfeiture . . . constitutes punishment and is . . . a 'fine' within the meaning of the *Excessive Fines Clause*" and should be examined to determine "whether it is excessive." *524 U.S. 321, 334, 118 S. Ct. 2028, 2036, 141 L. Ed. 2d 314 (1998)*. In Bajakajian, although the forfeiture statute mandated that the defendant forfeit "any property . . . involved in" his crime, *18 U.S.C. § 982(a)(1)*, the Court held that a forfeiture of the entire amount that the defendant had failed to declare he intended to transport outside the United States would have been "grossly disproportional to the gravity of his offense." *Bajakajian, 524 U.S. at 339-40, 118 S. Ct. at 2039, 141 L. Ed. 2d 314*. The Court reasoned that a forfeiture of $357,144 was unconstitutionally excessive because Bajakajian's only crime was failing to report the currency, the currency was not connected to any illegal activity, Bajakajian faced a maximum sentence of six months and a $5,000 fine under [**5] the Sentencing Guidelines, and his crime affected only the ability of the government to know that the currency had left the United States. *Id. at 337-39, 118 S. Ct. at 2038-39*.

The district court did not err when it determined that a forfeiture of the entire $967,100 involved in Ramirez's structuring crimes would be excessive and unconstitutional. Like the defendant in *Bajakajian*, Ramirez committed a reporting offense and faced a mandatory forfeiture of "all property . . . involved in [his] offense," *31 U.S.C. § 5317(c)(1)(A)*, but a forfeiture of that magnitude would be grossly disproportional to Ramirez's crime. Ramirez structured his financial transactions to evade reporting requirements, but he did not attempt to conceal his wrongdoing and his money was not connected to any illegal activity. In addition, Ramirez faced a fine under the Sentencing Guidelines about 12 times less than the amount demanded by the forfeiture statute and his crime affected only the Internal Revenue Service by depriving it of reports from banks about the amounts of Ramirez's deposits. The forfeiture of the entire $967,100 would have violated the *Excessive Fines Clause*.

[*953] We **AFFIRM** Ramirez's convictions and the [**6] order of forfeiture.

**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**UNITED STATES OF AMERICA**

v.                                                                  Case No. 6:09-cr-45-Orl-35KRS

**LUCIO RAMIREZ**
_____/

## ORDER

**THIS CAUSE** comes before the Court for consideration of the Government's Motion to Amend Written Judgment to Reflect Oral Pronouncement of Forfeiture. (Dkt. 159) Defendant Lucio Ramirez ("Defendant Ramirez") was convicted of Counts 22 – 124 of the Superseding Indictment for evading currency transaction reporting requirements by structuring transactions in violation of 31 U.S.C. §5324(a)(3) and 18 U.S.C. § 2. (Dkt. 104) On November 16, 2009, the Court held an evidentiary hearing regarding forfeiture. At the hearing the Government requested a money judgment in the amount of $967,100.00, as well as a forfeiture of $282,829.00, the amount remaining in the account at the time of seizure. (Dkt. 123 at 12) Defendant opposed both forfeitures alleging, inter alia, that (1) the Government failed to prove by a preponderance of the evidence what should be forfeited; (2) the $282,829.00 already seized by the Government should be subtracted from any forfeiture amount the Court found to be appropriate, namely the additional $967,100.00 sought by the Government; and (3) that the requested $967,100.00 forfeiture violates the Excessive Fines Clause of the Eighth Amendment because it is grossly disproportionate to the gravity of the

underlying offense. (Dkt. 123 at 22-23) The Court took the constitutionality of the forfeiture/judgment issue under advisement, requested supplemental briefing by the parties, and deferred entry of judgment. (Id. at 38)

Defendant Ramirez was sentenced on May 12, 2010. (Dkt. 130) At sentencing, the Court stated:

> [T]he appropriate financial penalty adequate to satisfy the concerns raised by the conduct for which this defendant was convicted, as well as by the purpose of the Sentencing Guidelines, would be $103,000 reflecting essentially $1,000 per violation of the statute with which the defendant was charged and on which he was convicted.

(Dkt. 131 at 4) On June 10, 2010, the Court entered Judgment in a Criminal Case, requiring, inter alia, Defendant to forfeit "those assets identified in the Court's Forfeiture Order." (Dkt. 136 at 5) Defendant Ramirez filed a Notice of Appeal as to the Judgment and Sentence on June 14, 2010. (Dkt. 137) On July 13, 2010, the Government filed a Notice of Cross Appeal regarding the same. (Dkt. 141) The Eleventh Circuit affirmed Defendant Ramirez's Judgment and Sentence on April 4, 2011, and issued its mandate on June 24, 2011. (Dkt. 160)

A review of the record in this case reveals that the Court never entered a written Forfeiture Order. Therefore, to avoid any ambiguity in the record, the Court finds that the Government's Motion to Amend the Judgment (Dkt. 136) should be **GRANTED** to reflect that Defendant Ramirez is subject to a forfeiture money judgment in the amount of $103,000.00.

Upon consideration of the foregoing, it is hereby **ORDERED** as follows:

(1) The Government's Motion to Amend Written Judgment to Reflect Oral Pronouncement of Forfeiture (Dkt. 136) is **GRANTED**; and,

(2) The **CLERK** is directed to **AMEND** page five (5) of the Court's Judgment (Dkt 136) under the Forfeiture heading as follows: "It is further ordered that the Defendant shall forfeit to the United States the sum of $103,000.00, reflecting $1,000 per violation of the statute with which the Defendant was charged and on which he was convicted."

**DONE** and **ORDERED** in Orlando, Florida, this 6th day of July 2011.

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record